UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

NICHOLAS M. ZAGOTTA,

        Debtor.

_____/

THOMAS A. BRUINSMA,                           Case No. 1:23-cv-302

        Appellant/Plaintiff,              HON. JANE M. BECKERING

v.

JAMIE L. ZAGOTTA, et al.,

        Appellees/Defendants.

_____/

**OPINION AND ORDER**

    This is an appeal from the judgment in an Adversary Proceeding in the Bankruptcy Court for the Western District of Michigan.  Appellant Thomas Bruinsma ("Trustee") appeals a decision by the Bankruptcy Court holding that Trustee, standing in either the shoes of the creditor or Debtor, was not, as a matter of law, entitled to imposition of a constructive trust over specific property at issue.  Having considered the parties' submissions, the Court concludes that oral argument is not necessary to resolve the issues presented.  For the reasons herein, the decision of the Bankruptcy Court is affirmed.

# I.  BACKGROUND

## A.  Factual Background[1]

In 2013, Nicholas M. Zagotta ("Debtor") and Mrs. Jamie L. Zagotta married and moved to Chicago, Illinois.  Debtor practiced law, and Mrs. Zagotta worked at a jewelry store.  In 2014, the couple had their first child, and Mrs. Zagotta left her job for full-time parenthood.  Also in 2014, Debtor and Christopher Johnson formed a limited liability company called Content Curation and Data Asset Management ("CCDM"), which initially performed technology consulting services, and then later focused on licensing technology.

In 2015, Debtor and Johnson met with Alfred Koplin, a Chicago investor, to discuss Koplin's potential investment in CCDM.  Debtor had become acquainted with Koplin through Debtor's father, who was also present for discussions about the initial investment.  Debtor told Koplin that CCDM had a contract with the International Business Machines Corporation ("IBM") and sent a copy of what appeared to be a Software License Agreement between CCDM and IBM to Koplin's counsel.  The document was signed by Laura Thompson, who was listed as an executive officer for IBM and who was Johnson's aunt.

Koplin formed a limited partnership, Jorie, LP ("Jorie"), to invest in CCDM.  Jorie invested $2,750,000 into CCDM on September 29, 2015.  The same day, Debtor signed a check on behalf of CCDM and payable to himself in the amount of $1,225,000 and deposited it in his "Law Offices of Nicholas M. Zagotta" bank account.  Approximately two weeks later, Debtor used $895,000 of the funds from that bank account to purchase a property in Chicago ("the Illinois Property"), which

---

[1] A more detailed factual background has been provided in the Opinion issued by the Bankruptcy Court (ECF No. 12-10).  Unless otherwise noted, the facts herein are derived from the parties' statements of undisputed material facts (*see* ECF Nos. 12-4 at PageID.570, 12-10) The facts are generally not disputed.  *See id.*

was acquired by Debtor and Mrs. Zagotta as tenants by the entirety.  The total purchase price was $949,000.  Debtor testified that he and Mrs. Zagotta decided to purchase the Illinois Property because they were expanding their family and because CCDM "had this IBM deal going on and everybody was under the realistic impression that there was a lot of money to be made off the license agreement" (Debtor Trans., ECF No. 12-3 at PageID.371).  On November 2, 2015, CCDM received a second investment from Jorie in the amount of $2,950,000, and the following day, Debtor received a $1,400,000 wire transfer from CCDM.

In 2016, Debtor and Mrs. Zagotta's financial advisor recommended that they consult an estate planning attorney, who advised that the Illinois Property be placed in a revocable trust.  The Jamie L. Zagotta Revocable Trust was created on December 19, 2016, and Debtor and Mrs. Zagotta transferred the Illinois Property to the Trust.

On June 26, 2017, Jorie and Koplin filed a lawsuit ("the Illinois Lawsuit") against Debtor, Johnson, Debtor's father, the father's law firm, and CCDM in the DuPage County, Illinois Circuit Court claiming fraudulent inducement, breach of fiduciary duty, unjust enrichment, civil conspiracy, unlawful distribution, and breach of contract.  Neither Mrs. Zagotta nor her Trust were parties to the Illinois Lawsuit.

In 2019, while the Illinois Lawsuit was still pending, Debtor and Mrs. Zagotta moved to Michigan.  The Trust sold the Illinois Property for $1,135,000.  $722,712.52 of the sale proceeds were used by the Trust to purchase property in Grand Rapids, Michigan ("the Michigan Property") on April 30, 2019.  The total purchase price was $760,000.

Through discovery in the Illinois Lawsuit, it became clear that the IBM contract was fraudulent and never existed.  On August 6, 2019, the Illinois Court entered a liability judgment against Debtor for Jorie and Koplin's unjust enrichment claim, and on August 29, 2019, the Illinois

Court entered a money judgment against Debtor.  On August 30, 2019, the Illinois Court also entered an order imposing a constructive trust on the Michigan Property for Jorie's benefit.

On September 16, 2019, Jorie filed a motion for turnover in the Illinois Lawsuit, seeking an order compelling Debtor to deliver title to the Michigan Property within fourteen days.  The Illinois Court granted the motion on October 9, 2019 and entered an order requiring Debtor to "immediately turn over deed, title, and possession" of the Property (10/9/2019 Illinois Order, ECF No. 12-3 at PageID.532).  The Illinois Court amended its order on October 28, 2019 to require Debtor to "take all necessary actions required" to effectuate the turnover of the Michigan Property, including but not limited to making written direction to Mrs. Zagotta (10/28/2019 Illinois Order, ECF No. 12-3 at PageID.534).  Debtor made such written direction, but Mrs. Zagotta took no action in response, based on the advice of her attorney.  The Michigan Property was never turned over to Jorie.

On January 23, 2020, Debtor filed a voluntary Chapter 7 petition.  On February 21, 2020, Jorie and Koplin filed a motion for relief from stay in the Bankruptcy Court to allow them to proceed to trial on the two remaining claims—fraudulent inducement and breach of fiduciary duty—in the Illinois Lawsuit.  The Bankruptcy Court granted the motion, and the Illinois Court found for Debtor and other remaining defendants on both remaining claims.  In doing so, the Illinois Court observed that no one involved in the initial investment transaction between the parties, except for Johnson, suspected that the IBM contract was fraudulent.

On October 2020, Jorie, Koplin, and Trustee entered into a settlement agreement pursuant to which Jorie transferred "its right, title and interest in any constructive trust held by it on the [Michigan Property] and/or any other property owned by the Debtor, the Debtor's spouse and/or her Trust" to the bankruptcy estate and provided that the estate would be "vested with the rights

4

and powers of Jorie to pursue an action for constructive trust." On November 25, 2020, the Illinois Court approved the settlement agreement.

## B. The Bankruptcy Court Proceedings

Trustee filed the Adversary Proceeding in the Bankruptcy Court on December 18, 2020 for turnover of the Michigan Property and for claims of unjust enrichment and imposition of a constructive trust against Debtor Nicholas M. Zagotta, Jamie L. Zagotta, and the Jamie L. Zagotta Revocable Trust (collectively "Appellee-Defendants"). Trustee also sought avoidance and recovery of the initial transfer of funds from Debtor to purchase the Illinois Property.

The parties filed cross-motions for summary judgment on which the Bankruptcy Court held a hearing on June 30, 2022. In a 48-page opinion dated February 9, 2023, the Bankruptcy Court denied Trustee's motion for summary judgment, granted Appellee-Defendants' motion for summary judgment, and dismissed the complaint in the Adversary Proceeding. The Bankruptcy Court reasoned that although Trustee's view—that the transfers occurring between Debtor and Mrs. Zagotta and her trust were suspicious and potentially inequitable—was understandable, "the normal means of challenging the transfers as fraudulent [were] not available in this case" due to circumstances outside of Trustee's control, including the timing of transfers and unique features of Illinois law (Bankr. Op. [ECF No. 12-10] at 47). The Bankruptcy Court further held that the equitable remedy of constructive trust was not warranted in this case "where Mrs. Zagotta and her Trust acquired their property interests in ordinary transactions and the full value of that property cannot be directly traced to the original unjust enrichment" (*id.* at 47–48).

## C.  Procedural History

On March 24, 2023, the Clerk's Office docketed Trustee's notice of appeal in this case. Trustee limits his appeal to the Bankruptcy Court's decision regarding the imposition of a

constructive trust (ECF No. 14 at PageID.1707).

## II.  LEGAL STANDARD

When reviewing a bankruptcy court's decision on appeal under 28 U.S.C. § 158(a)(1), a district court reviews a bankruptcy court's conclusions of law de novo, and affirms its factual findings unless they are clearly erroneous.  *In re Made in Detroit, Inc.*, 414 F.3d 576, 580 (6th Cir. 1996); 255 *Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co.*, 100 F.3d 1214, 1216 (6th Cir. 1996).  Because a decision to grant summary judgment is a question of law, a district court reviews the bankruptcy court's grant of summary judgment under the de novo standard.  *Hagan v. Baird*, 288 F. Supp. 3d 803, 806 (W.D. Mich. 2018) (citing *In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001); *In re Markowitz*, 190 F.3d 455, 463 (6th Cir. 1999)).  The party seeking review of the bankruptcy court's determination bears the burden of proof.  *In re Shearer*, No. 1:95-cv-761, 1996 WL 173154, at *1 (W.D. Mich. 1996) (citing *In re Van Rhee*, 80 B.R. 844, 846 (W.D. Mich. 1987)).

Federal Rule of Civil Procedure 56, incorporated by Federal Rule of Bankruptcy Procedure 7056, provides that a court should enter summary judgment in favor of a party where that party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056(c).  In resolving a motion for summary judgment, a court must consider the evidence and all reasonable inferences in favor of the nonmoving party.  *In re B & P Baird Holdings, Inc.*, 759 F. App'x 468, 473 (6th Cir. 2019) (quoting FED. R. CIV. P. 56(a) and citing FED. R. BANKR. P. 7056).

## III.  DISCUSSION

### A.  <u>Constructive Trust as Assignee of Jorie</u>

Trustee argues that the Bankruptcy Court erred in declining to impose a constructive trust

on the Michigan Property as Jorie's assignee because the trust was unjustly enriched to Jorie's detriment and Jorie's investment was traceable to the Michigan Property, or at the very least, there is a genuine issue of material fact as to whether the Jorie investment was traceable to the Michigan Property (ECF No. 14 at PageID.1712, 1718).

In response, Appellee-Defendants argue that the Bankruptcy Court properly decided that standing in the shoes of Jorie, Trustee's unjust enrichment and imposition of a constructive trust claim fails as a matter of law because the constructive trust imposed by the Illinois Court only impacted Debtor's property interests, and at the time of the imposition of the constructive trust, Debtor did not hold title to the Michigan Property (ECF No. 17 at PageID.1750).  Appellee-Defendants further argue that Trustee did not raise any arguments related to lesser relief than a constructive trust, including that of an equitable lien, and so has waived such arguments (*id.* at PageID.1762).

Under both Illinois and Michigan law, a constructive trust is an equitable remedy and can be "imposed to prevent a person holding title to property to profit from his wrong or be unjustly enriched by retaining the property." *Sadacca v. Monhart*, 470 N.E.2d 589, 593 (Ill. 1984); *Ooley v. Collins*, 73 N.W.2d 464, 469 (Mich. 1955) (a court may impose a constructive trust "where such trust is necessary to do equity or to prevent unjust enrichment").[2]  Jorie assigned to Trustee all rights, title, and interest in any constructive trust on the Michigan Property or on any property owned by Debtor, Mrs. Zagotta, or her Trust to the bankruptcy estate.  Thus, the rights to which Trustee succeeded regarding the Michigan Property depends on the effect of the Illinois Court Order imposing a constructive trust and whether a new constructive trust on the Michigan Property

---

[2] The parties agree that Illinois and Michigan law on unjust enrichment and constructive trust is substantively the same (ECF No. 14 at PageID.1710 n.8; ECF No. 17 at PageID.1749).

could be imposed.

      *1.   Effect of Illinois Court Order Imposing Constructive Trust*

First, Illinois law determines the effect of an order entered by an Illinois state court in federal court. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

Enforcement of the Illinois Court Order does not entitle Trustee to turn over of the Michigan Property.  As the Bankruptcy Court noted, the Illinois Court judgment against Debtor was in personam insofar as it sought to compel performance by Debtor in satisfaction of the unjust enrichment claim exclusively against him.  It is undisputed that at the time the Illinois Court issued its Order imposing a constructive trust, Debtor did not hold legal title to the Michigan Property (Bankr. Op. at 33).  Given that the Michigan Property sat outside of Illinois' jurisdiction and that the owners of the Michigan Property (the Trust and Mrs. Zagotta) were not parties to the Illinois Lawsuit, the Illinois Court did not have jurisdiction to compel the transfer of the Michigan Property. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("[i]t is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party").  Indeed, the Illinois Court recognized the limits of its jurisdiction in imposing the constructive trust by ordering Debtor only to take "all necessary actions required" to effectuate the turnover of the property, including making "written direction to his wife, Jamie L. Zagotta" (10/28/2019 Illinois Order, ECF No. 12-3 at PageID.534).  Accordingly, Trustee, standing in Jorie's shoes, does not have an entitlement to a constructive trust over the Michigan Property based on the Illinois Court Order alone.  Therefore, the Court agrees with the Bankruptcy Court that to the extent Trustee, as the assignee of Jorie, seeks turnover of the

Michigan Property based solely on the enforcement of the Illinois Court Order, Trustee is not entitled to that relief.

   *2.  Imposition of New Constructive Trust*

   Trustee argues that the Bankruptcy Court should have imposed a new constructive trust against the Michigan Property because (1) Jorie's investment in CCDM was traceable to the Michigan Property and (2) Appellee-Defendants in the Adversary Proceeding were estopped from denying that the Jorie funds were traceable to the Michigan Property (ECF No. 14 at PageID.1713). The Court will address each argument in turn.

    a.  Tracing

   Illinois follows the "well-established principle" that "[t]he trust *res,* if capable of identification, may be followed by the beneficiary into any and all the forms it may assume." *Sadacca*, 470 N.E.2d at 593.  "When a person's property has been wrongfully appropriated and converted into a different form, equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrong-doer but as long as it can be followed and identified in whosoever hands it may come, except those of a bona fide purchaser for value." *Id.* at 593–594 (internal quotation marks & citation omitted).  For a court to impose a constructive trust pursuant to this rule, "the claimant must prove that his specific funds were used to purchase a specific subsequent asset. It is not enough to show only that the property *may have been* a product" of the original funds.  *In re Comm'r of Banks & Real Est.*, 764 N.E.2d 66, 108 (Ill. 2001) (citing G. Bogert & G. Bogert, Law of Trusts & Trustees § 921, at 435 (2d ed. 1995)) (emphasis in original).  In other words, "it is not enough to simply show that trust funds went into the commingled account."  *In re Mich. Boiler & Eng'g*, 171 B.R. 565, 569 (Bankr. E.D. Mich. 1993).  "One can follow his money so long as it is not so mingled with other money or property

that it can no longer be specifically separated." *In re Comm'r of Banks & Real Est.*, 764 N.E.2d

at 108.

As Appellee-Defendants observe, the Bankruptcy Court "painstakingly went through all of

the transactions that resulted in the purchase of the Michigan Property" (ECF No. 17 at

PageID.1759), tracing each fact as follows:

> The Defendants originally purchased the Illinois Property for $949,000 in
> October 2015. The parties agree that $895,000 of the purchase price was
> paid with funds from the Debtor's law office bank account, where some of
> the proceeds of Jorie's CCDM investment had been deposited
> approximately two weeks earlier. However, the Defendants also made a
> $50,000 earnest money deposit, the exact origins of which are not known.
> After acquiring the Illinois Property, the Defendants made numerous
> improvements to the property. Although the parties agree that these
> improvements were paid for using funds from the Debtor's law firm account
> as well as the Defendants' personal checking account, there is no evidence
> that any of these funds were directly traceable to Jorie's investment. After
> the Illinois Property was transferred to the Trust, the Trust sold the property
> for $1,135,000, which is significantly more than the Defendants paid for it.
> It is clear that the value of the real property at this time was attributable not
> only to Jorie's investment, but also to the Defendants' earnest money
> deposit, the improvements they made between 2015 and 2019, and arguably
> to general appreciation. In addition, when the Illinois Property was sold,
> almost $300,000 of the sale proceeds were used to pay off a loan that had
> been obtained by the Debtor; there is no evidence in the record to show
> whether this $300,000 was paid from funds received at the sale that were
> traceable to Jorie's investment, the deposit, the improvements, or any other
> source. Approximately $723,000 of the sale proceeds were then put toward
> the purchase of the Michigan Property. However, the total purchase price
> for the Michigan Property was $760,000, and the settlement statement
> shows that the Defendants again contributed an earnest money deposit, the
> source of which is not disclosed in the record.
>
> As this recitation demonstrates, the direct factual links between Jorie's
> investment and the full value of the Michigan Property break down at
> several critical points. Again, as the party bearing the burden of proof on
> the tracing issues, it was the Trustee's obligation to come forward with
> specific facts that could lead a rational trier of fact to find in his favor. Here,
> even if one focuses only on the two earnest money deposits, which have not
> been (and in the case of the deposit on the Michigan Property, likely cannot
> be) traced to the Jorie investment, the undisputed facts lead to the opposite
> conclusion: that the Trustee is not entitled to a constructive trust on the

> Michigan Property as a whole, which is the only relief he has requested. At this advanced stage in the proceeding, the Trustee has not provided any evidence suggesting the chain was not broken at these critical points, nor has he articulated any legal theories or presumptions that would permit the court to disregard these breaks in the chain. Finally, the court reiterates that the Trustee has not requested any relief, such as an equitable lien, for anything less than the full value of the Michigan Property.

(Bankr. Op. at 42–43, ECF No. 17 at PageID.1759). Trustee identifies no clear error in the Bankruptcy Court's factual tracing, and, on de novo review of the decision on summary judgment, the Court concludes that Trustee did not meet his burden to show that a jury could find the standard for traceability satisfied. Moreover, Appellee-Defendants' statements that Debtor used some of the money from Jorie's initial investment to purchase the Illinois Property, the proceeds of which contributed to the purchase of the Michigan Property, does not amount to a concession that Jorie's funds could be traced to the Michigan Property with the requisite specificity. In short, the Court concludes that the Bankruptcy Court correctly decided that Trustee was not entitled to the imposition of a new constructive trust based on the traceability of Jorie's investment to the Michigan Property.[3]

### b. Collateral Estoppel

Trustee further argues that even if the facts did not support the conclusion that the funds were traceable, Appellee-Defendants were collaterally estopped from denying that unjust enrichment occurred in the Adversary Proceeding (ECF No. 14 at PageID.1713).

In response, Appellee-Defendants argue that collateral estoppel does not apply because the

---

[3] Trustee admits that the potential for lesser remedies of equitable lien or the imposition of a constructive trust on anything lesser than the home itself were not raised on summary judgment in the Bankruptcy Court (ECF No. 21 at PageID.1786). Thus, these issues are waived on appeal. *See In re Sinta*, No. 13-10151, 2013 WL 1946185, at *2 (E.D. Mich. May 9, 2013) ("An issue is waived on appeal if it was not first presented to the bankruptcy court.") (citing *In re Ferncrest Court Partners, Ltd.*, 66 F.3d 778, 782 (6th Cir. 1995)).

issues in the Illinois lawsuit and the Adversary Proceeding were not the same and Mrs. Zagotta was not represented in the Illinois Lawsuit (ECF No. 17 at PageID.1757).

Under Illinois law, "collateral estoppel, also referred to as issue preclusion, promotes fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions." *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 849 (Ill. 2001) (citing *Kessinger v. Grefco, Inc.*, 672 N.E.2d 1149 (Ill. 1996)). "The minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is *identical* with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Nowak v. St. Rita High School*, 757 N.E.2d 471, 478 (Ill. 2001) (emphasis in original).

Like the Bankruptcy Court, this Court cannot conclude that the traceability of Jorie's investment to the Michigan Property was decided by the Illinois Court. Trustee provides no evidence that the Illinois Court made any factual findings to that effect. Trustee contends that Illinois law requires that an issue be decided on the merits to be entitled to preclusive effect, and that the Illinois Court order regarding the constructive trust on the Michigan Property was a decision on the merits, and thus should be entitled to preclusive effect (ECF No. 21 at PageID.1784). However, Trustee's argument is conclusory and does not distill the issue that was decided on the merits in the Illinois Lawsuit that gave rise to the remedy of constructive trust. Therefore, despite the Illinois Court's attempt to impose a constructive trust on the Michigan Property, collateral estoppel did not prevent the Appellee-Defendants from arguing—and the

Bankruptcy Court from deciding—the issue of traceability.[4]

Accordingly, the Court concludes that Trustee was not entitled to the imposition of a new constructive trust on the Michigan Property as Jorie's assignee.[5]

### B.  Constructive Trust Standing in Debtor's Shoes

Trustee argues that even if he was not entitled to a constructive trust as Jorie's assignee, he was entitled a constructive trust on the Michigan Property standing in Debtor's shoes because "[i]t was the *Debtor* who provided the funds used to purchase, improve, and maintain the Illinois and Michigan properties, *not* the Trust or Mrs. Zagotta" (ECF No. 14 at PageID.1720) (emphasis in original).

In response, Appellee-Defendants argue that under Illinois and Michigan law, the purchase of the Illinois Property and subsequent transfer to the Trust was a marital gift pursuant to which a party may not recover damages for unjust enrichment (ECF No. 17 at PageID.1766).  Appellee-Defendants further argue that even if the Court were to find that the purchase and transfer of the Illinois Property were not gift transactions, there was no inequity or injustice that resulted, and thus there was no unjust enrichment (*id.*).

"As a creature of statute, the trustee in bankruptcy has only those powers conferred upon him by the Bankruptcy [Code]."  *In re Cannon*, 277 F.3d 838, 853 (6th Cir. 2002) (citing *Cissell v. American Home Assurance Co.*, 521 F.2d 790, 792 (6th Cir. 1975)).  "The trustee stands in the

---

[4] Given that the Court's conclusion with respect to collateral estoppel rests on the lack of evidence that the same issue of traceability was brought to and decided by both the Bankruptcy Court and the Illinois Court, this Court need not address the parties' arguments concerning privity and virtual representation.

[5] Trustee also argues that the Bankruptcy Court erred in placing weight on Mrs. Zagotta's lack of culpability (ECF No. 14 at PageID.1717).  Finding the lack of traceability issue dispositive to summary judgment on the imposition of constructive trust, the Court does not reach the materiality of Mrs. Zagotta's culpability.

shoes of the debtor and has standing to bring any action that the bankrupt could have brought had he not filed a petition for bankruptcy." *Id.* (citing *Melamed v. Lake Cnty Nat'l Bank*, 727 F.2d 1399, 1404 (6th Cir. 1984)).  Therefore, Trustee is entitled to stand in Debtor's shoes and pursue claims for unjust enrichment and imposition of a constructive trust against Mrs. Zagotta and the Trust for the benefit of the bankruptcy estate.  *See In re Short*, 625 B.R. 678, 693 (Bankr. E.D. Mich. 2021) (considering the imposition of a constructive trust in the case of a trustee seeking to augment the bankruptcy estate by pursuing the prepetition claim of the debtor based upon prepetition conduct amounting to unjust enrichment).

To sustain a claim of unjust enrichment, Trustee must establish two elements:  (1) the receipt of a benefit by Appellee-Defendants (Mrs. Zagotta and her Trust) from Debtor; and (2) an inequity resulting to Debtor because of the retention of the benefit by Appellee-Defendants. *Meisner L. Grp. PC v. Weston Downs Condo. Ass'n*, 909 N.W.2d 890, 900 (Mich. 2017).  Although Appellee-Defendants likely received a benefit from Debtor in the transfer of the Illinois Property, there are no facts in the record that would create a genuine issue of material fact as to the second unjust enrichment prong—that inequity or injustice resulted from the retention of the benefit.  *See Kammer Asphalt Paving Co. v. E. China Twp. Sch.*, 504 N.W.2d 635, 646 (Mich. 1993) (Cavanagh, J., concurring in part) ("We must be cautious in applying this doctrine [of unjust enrichment], however, because the mere fact that a benefit has been conveyed does not necessarily indicate that it is unjust for the party to retain that benefit.").  The undisputed facts indicate that Debtor and Mrs. Zagotta voluntarily transferred their interest in the Illinois Property to the Trust pursuant to an estate plan on the advice their estate planning counsel.  That the Michigan Property may have been purchased with proceeds of Jorie's investment premised on a contract that was later proven to be forged does not alone establish that inequity resulted from Appellee-Defendants'

retention of the property.  This is especially true in light of the Illinois Court's finding that Debtor was unaware of the fraudulent nature of the IBM contract.  Thus, the Court agrees with the Bankruptcy Court that it cannot be said that the initial purchase of the Illinois Property was unjust to Debtor or that the transfer of the Illinois Property to the Trust was unjust.

In sum, the Court concludes, as the Bankruptcy Court did, that viewed in the light most favorable to Trustee, a constructive trust is not warranted in this case, whether Trustee is standing in the shoes of Jorie or Debtor.  Accordingly, the Bankruptcy Court did not err in holding that Appellee-Defendants are entitled to summary judgment.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the decision of the United States Bankruptcy Court for the Western District of Michigan in Bankruptcy Case No. 20-00242 and Adversary Proceeding No. 20-80169 that Trustee appeals from is AFFIRMED.


Dated:  November 13, 2023                          /s/ Jane M. Beckering
                                        JANE M. BECKERING
                                        United States District Judge